Malcolm J. Warren, Esq.
THE WARREN LAW FIRM, LLC
111 Woodrow Wilson Dr, Suite B
Valdosta, GA 31602
Phone: (229) 262-7773 | Fax: (229) 262-1653
Email: mjwarren@thewarrenlawfirmllc.com

## UNITED STATE DISTRICT COURT

## IN THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| RICHARD M. VARN, II, | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT |
| CITY OF NASHVILLE, GA AND CHARLES EDWARDS in his official capacity as Chief of Police for the City of Nashville Police Department, | |
| Defendants. | |

Plaintiff, RICHARD M. VARN, for his Complaint against the Defendants, alleges:

### JURISDICTION AND VENUE

1.

Plaintiff invokes this Court's jurisdiction under 28 U.S.C §§ 1331 and 1343 on the ground that this action arises under the First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Plaintiff invokes this Court's jurisdiction under Title VII of the Civil Rights Act of 1964,42 U.S.C. § 2000e et seq. Plaintiff invokes this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.

2.

The venue of this action is properly placed in the Middle District of Georgia pursuant to 28 U.S.C § 1391 because Plaintiff's claims arise in this district.

**PARTIES**

3.

Plaintiff is a citizen of the United States of Lebanese descendent and resides in Nashville, Berrien County, Georgia. Plaintiff works in a supervisor position as a Detective Sergeant for the City of Nashville, Georgia, in the Nashville Police Department.

4.

Defendant, CITY OF NASHVILLE, GA, is a corporate, governmental body created pursuant to the laws of the State of Georgia.

5.

Defendant, CHARLES EDWARDS, Chief of the Nashville Police Department is the chief employment officer of the Nashville Police Department. In his official capacity, CHARLES EDWARDS, is the "chief administrative officer" of the Nashville Police Department pursuant to the City Charter. The Chief is sued in his official capacity only.

6.

Defendants are "employers" of the Plaintiff within the meaning of 42 U.S.C § 2000e (a) and (b).

**ADMINISTRATIVE PROCEDURES**

7.

Plaintiff timely filed a charge of discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC") on or about October 21, 2021.

8.

By letter dated March 8, 2022, Plaintiff requested authorization to file suit based on the 2021 charge.

COMPLAINT

2

9.

By letter dated March 11, 2022, the EEOC sent to the Plaintiff a letter authorizing it to commence this action within ninety (90) days of Plaintiff's receipt of the letter.

10.

Less than 180 days had elapsed between Plaintiff's filing of its charge of discrimination and the EEOC's issuance of the letter authorizing commencement of this action. Plaintiff has satisfied all private, administrative, and judicial prerequisites to commencing this action. Neither the State of Georgia nor any city or county having jurisdiction over the parties has a law prohibiting the unlawful employment practices alleged in this Complaint under which Plaintiff was obliged to make a Complaint or charge.

**STATEMENT OF THE CASE**

11.

Plaintiff has been since January 2014 an officer with the Nashville Police Department in Nashville, GA. Plaintiff's employment at the Nashville Police Department is governed by City of Nashville, laws of the State of Georgia, and the Georgia Peace Officers Standards Training Council. The rules and regulations of employment with the City of Nashville, Georgia is comprised of an Employee Handbook.

12.

Prior to June 2021, the Defendants showed appreciation for the Plaintiff's work and employment. Plaintiff rose to the rank of Detective Sergeant within the Police Department.

13.

Since the week of June 25, 2021, Defendant CHARLES EDWARDS has not spoken to nor acknowledged Plaintiff in the office or elsewhere.

14.

Plaintiff filed his Complaint with the Equal Employment Opportunity Commission ("EEOC") after continuously working to receive a resolution of his grievance in reference to an incident from June 12, 2021, with a fellow officer by the name of Sergeant EDDIE YARBROUGH then employed by the CITY OF NASHVILLE, GA and Chief CHARLES EDWARDS. Sgt. YARBROUGH is no longer with the Nashville Police Department as of August 5, 2021.

15.

Plaintiff's employment atmosphere since the June 12, 2021 incident and filing a grievance has been hostile. Plaintiff believes, and thus alleges, that Chief CHARLES EDWARDS and the CITY OF NASHVILLE, GA, vicariously through CHARLES EDWARDS, have placed Plaintiff's employment and career in jeopardy with its failure to address the issue of racial discrimination and retaliation by virtue of unsafe, unethical, and unlawful duties given to Plaintiff.

16.

Plaintiff's new duties include but not limited to working in an evidence room, which Plaintiff contends is against the policy and procedures of the Nashville Police Department, GA POST standards, and Georgia law. This duty being the sole duty of the Evidence Custodian, to which, Plaintiff does not hold the position of, nor has been hired to do. Plaintiff further alleges that the said Evidence Room has been compromised and contains many firearms and other weapons involved in cases from violent crime to murder but have not been properly catalogued and subjects the Plaintiff to possible criminal charges if any firearm, weapon, or evidence is deemed tainted under his watch.

17.

Plaintiff has made his concerns with the duty of cataloguing the Evidence Room known to the Defendant by virtue of grievances only to be met with continual resentment and maltreatment by Defendants. Plaintiff has reached out to multiple City Managers to reach a resolution of his concerns, but similar treatment is given in accordance with all his prior grievances, by Defendants.

## STATEMENT OF FACTS

18.

On May 13, 2020, Chief EDWARDS expressed to Plaintiff, who is of Lebanese descent that he thought Plaintiff looked like Saddam Hussein. This was stated in front of multiple witnesses as it was a birthday party for the Chief.

19.

On June 11, 2021, Plaintiff received a call to a domestic violence call while on duty, which was being worked by Sgt. YARBROUGH. During the investigation of the call, Sgt. YARBROUGH displayed hostile attitudes and views toward Plaintiff. Sgt. YARBROUGH made disparaging comments about Hispanic people, particularly Mexicans. Plaintiff informed Sgt. YARBROUGH that his wife is of Mexican descent and that he took his comments personally. In response, Sgt. YARBROUGH made disparaging comments about people of Arabic descent, to which Plaintiff is a descendant of. This incident is not the first incident of disparaging racial comments by Sgt. YARBROUGH as there were incidents in March 2021 and April 2021.

20.

Plaintiff informed his chain of command through an email per the Employee Handbook requiring grievances be put in writing. During the week of June 14, 2021 through June 19, 2021,

Chief CHARLES EDWARDS presented a pattern of hostile conduct towards Plaintiff by staring angrily at Plaintiff and no acknowledging his presence.

21.

On June 17, 2021, Assistant Chief MAJOR KNOWLES advised Plaintiff that Chief CHARLES EDWARDS received his e-mail grievance. Assistant Chief KNOWLES stated that he printed the grievance and gave it to Chief EDWARDS. He further advised Plaintiff that Chief EDWARDS instructed him to tell Plaintiff that Chief EDWARDS did not take grievances via email, contrary to the Employee Handbook's direction. Plaintiff responded by informing Assistant Chief KNOWLES that the email is how Plaintiff wanted to file his grievance due to it being time stamped and dated, to which KNOWLES responded that Chief EDWARDS stated that an email could be requested through an open records request.

22.

On the weekend of June 25, 2021 to June 27, 2021, Sgt. YARBROUGH was working, in which Plaintiff and Lieutenant BUSBIN were on-call as Detectives for the Nashville Police Department. Sgt. YARBROUGH's shift had a domestic violence case and a traffic fatality case to which Plaintiff should have been notified and worked as he was on call after hours at that time. Instead, Lt. BUSBIN notified and worked both incidents, causing Plaintiff to suffer financial loss in the loss of extra hours which could lead to overtime pay.

23.

On July 3, 2021, Chief EDWARDS advised Plaintiff, Lt. BUSBIN, and Officer OBESTER to communicate and keep Adel Highway traffic flowing due to the fireworks event. Plaintiff and Lt. BUSBIN agreed to Plaintiff taking the lead and when Plaintiff's intersection stopped then Lt. BUSBIN would let his flow. Due to Officer OBSTER's actions, Adel Highway

traffic stopped North and South. Plaintiff communicated on the radio to Officer OBSTER that the highway was backing up and needed to be opened up. Chief EDWARDS replied on the radio and advised Plaintiff in a hostile manner that he was in control of the intersection, and he was aware of the traffic. The call being heard by fellow officer and surrounding department in Berrien County as well as civilians with scanners.

24.

On July 7, 2021, Plaintiff contacted then City Manager PETER SCHULTZ in reference to the grievance due to not having any update since the filing of the grievance in relation to the June 11, 2021 incident with Sgt. YARBROUGH. Plaintiff informed former City Manager SCHULTZ about the grievance to which City Manager SCHULTZ was never informed up to that point. Further, City Manager SCHULTZ informed Plaintiff that he received an email from Plaintiff's wife about Sgt. YARBROUGH's hostility toward Mexicans. Former City Manager SCHULTZ stated he had spoken to Chief EDWARDS about the email from Plaintiff's wife and that Chief EDWARDS stated that the matter was being looked into. At this meeting, Plaintiff informed former City Manager SCHULTZ of the hostile working conditions and environment.

25.

On July 19, 2021, Assistant Chief KNOWLES advised Plaintiff that Chief EDWARDS was going to meet with Plaintiff and discuss his filed grievance. While waiting for a response, Plaintiff suffered mental anguish, emotional distress, and humiliation stemming from racial statements made by Sgt. YARGBROUGH in front of his entire shift. Lt. BUSBIN continues to receive calls during Plaintiff's on call which causes a loss of money due to losing the hours.

26.

COMPLAINT
7

On July 22, 2021, Chief EDWARDS called Plaintiff on his office phone to his office. Plaintiff met with Chief EDWARDS in his office and the meeting took place without any other department heads nor witnesses. Chief EDWARDS explained that there was no evidence to corroborate Plaintiff's account of the June 11, 2021 incident. He stated that Sgt. YARBROUGH made comments in relation to Hispanics, but his statements did not measure up to the level of Plaintiff's allegations. Chief EDWARDS informed Plaintiff that he had spoken with former City Manager SCHULTZ on multiple occasions in reference to the grievance. Chief EDWARDS offered two options in resolving the grievance with one (1) being that he could just close the grievance and say there was nothing to substantiate the allegations or two (2) offer Plaintiff a polygraph. Chief EDWARDS repeatedly indicated his impression of the allegations as unfounded.

27.

On July 23, 2021, Chief EDWARDS met with Plaintiff since the original meeting. Chief EDWARDS continually made efforts to get Plaintiff to drop the issue of his grievance and its allegations. At this meeting, Assistant Chief KNOWLES was present.

28.

On July 28, 2021, another meeting took place involving Plaintiff, Chief EDWARDS, and Assistant Chief KNOWLES. At this meeting, Chief EDWARDS advised Plaintiff that he officially closed the internal investigation. Plaintiff was provided with the documented internal investigation memo provided to Chief EDWARDS by Lt. BUSBIN. Plaintiff was provided an official letter that the investigation had been closed and considered unfounded. Plaintiff was not provided any written statements or audio, or video recorded statements by the accused or the witnesses as evidence used to form the decision. Plaintiff never received an explanation of why

he would not be provided a chance to take a polygraph which was offered to show veracity to his allegations by Chief EDWARDS. Plaintiff appealed the decision to former City Manager SCHULTZ.

29.

On August 3, 2021, within the five (5) day period for appeals, Plaintiff filed an appeal to the decision of his grievance. This appeal was submitted via email to former City Manager SCHULTZ.

30.

On August 13, 2021, Plaintiff received a cell phone call from former City Manager SCHULTZ in reference to Plaintiff's appeal. SCHULTZ stated he was still investigating and had called in old and new employees at the Nashville Police Department.

31.

On September 16, 2021, Plaintiff emailed Mayor Pro Tem JOHN CLAYTON in reference to his appeal. Plaintiff did not get a response from Mr. CLAYTON but did receive an email from SCHULTZ. The email informed Plaintiff that SCHULTZ was still investigating and looking into a couple more matters before rendering a decision.

32.

On September 18, 2021, Plaintiff received an email from Mr. CLAYTON informing Plaintiff that he was out of town but would look into his issue when he returned.

33.

On September 30, 2021, Plaintiff received a text message from SCHULTZ stating that SCHULTZ had not forgotten about Plaintiff and that he scheduled a meeting with Plaintiff for October 4, 2021 at 9:00 A.M.

34.

On October 4, 2021, Plaintiff attended a meeting with SCHULTZ at 9:30 A.M. Chief EDWARDS met with SCHULTZ at 9:00 A.M. the same morning. Plaintiff met with SCHULTZ in SCHULTZ's office. SCHULTZ expressed that he thought that the grievance should have been handled differently. SCHULTZ stated that the Chief's decision letter went in Sgt. YARBROUGH's file not Plaintiff's. However, Plaintiff believes and alleges that a letter indicating unfounded claims was put into his personnel file. Plaintiff expressed displeasure at the fact that the letter of unfounded decision would be noted because he believed it would look as though Plaintiff lied about his allegations. Plaintiff further expressed that he was never offered a chance to take the polygraphs offered. Plaintiff informed SCHULTZ that Chief EDWARDS has previously used a racial slur against Plaintiff.

35.

On October 5, 2021, Plaintiff emailed Mr. CLAYTON his appeal of SCHULTZ's decision. Mr. CLAYTON responded the same day via email to which he stated that Plaintiff's appeal would be added to an executive session at the next city council meeting. Plaintiff responded to the email with a Lt. FRED BUSBIN's internal investigation on his grievance and Chief EDWARDS' decision letter.

36.

On October 7, 2021, Lt. BUSBIN notified Plaintiff in person that he was covering Plaintiff's detective after hour calls from Sgt. WHITLEY's shift. Plaintiff inquired as to how long this arrangement has been occurring. Lt. BUSBIN informed him it had been going on for a while and that Chief EDWARDS and him decided it was for the best until Plaintiff's appeal got worked out. Plaintiff advised Lt. BUSBIN that he was losing overtime hours and that it was not

fair to him because of his grievance was being mishandled and drug out, to which Lt. BUSBIN agreed.

37.

On October 21, 2021, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC").

38.

On October 28, 2021, Plaintiff emailed all City Council Members to investigate his appeal. The Council Members named are BILLY RETTERBUSH, WALT STEWART, SCOTT STALNAKER, ERIC GAITHER, and ANTONIO CARTER. Plaintiff did not receive any information that his appeal is being investigated or a decision has been made by the council members as November 16, 2021.

39.

On December 6, 2021, Plaintiff worked the Christmas parade to which he received a phone call from Lt. BUSBIN informing him that someone thought he had left his post. Plaintiff was informed over the radio to relieve himself of post which is not normal.

40.

On January 4, 2022, the head of the water department, JOHN REYNOLDS, entered Plaintiff's office and made racial slurs to him. REYNOLDS asked what Plaintiff was, pertaining to his ethnicity, and called him Lebanese Lover and Egyptian Lover wile playing the song Egyptian Lover and dancing. REYNOLDS knew the name Lebanese Lover was a reference to a suspected officer posting on social media Plaintiff's Facebook profile picture and placed an ad on a homosexual site stating Plaintiff was a Lebanese Lover looking for sex, which resulted in

Plaintiff having to change his personal cell phone number. The incident of the posting took place two years prior.

41.

On January 11, 2022, Plaintiff met with then new City Manager DIANE WESTBERRY at City Hall and provided her with his current appeal documents.

42.

On January 12, 2022, Plaintiff filed a grievance up the chain of command in reference to Detective Lieutenant BUSBIN instructing him to violate strict violations to the Standards of Procedure concerning the integrity of the evidence room and evidence.

43.

On January 18, 2022, Plaintiff responded to Defendant, CITY OF NASHVILLE, GA's rebuttal to the Plaintiff's EEOC complaint.

44.

On January 30, 2022, Plaintiff sent an email to the City of Nashville Council Members detailing the integrity of evidence room located at the Nashville Police Department. The email outlines the property in the evidence room, the property located in the evidence room, and inspection protocols. Plaintiff expressed his concern with the duty of cataloging weapons and evidence when he is not the evidence custodian. Plaintiff expressed his prior conversations with former City Manager DIANE WESTBERRY.

45.

Plaintiff further expressed his concern with emails and grievances through emails dated January 14, 2022 through January 25, 2022. A grievance was filed on January 25, 2022.

46.

Plaintiff noted in his grievance issues with the chain of custody within the Nashville Police Department. Further, Plaintiff noted that evidence would sit in Lt. BUSBIN's office for long periods of time before securing them in the evidence room or sending off to the Georgia Bureau of Investigation (GBI) Crime Lab. There are instances where blood draws and other fluids for testing were left sitting in the Nashville Police Department refrigerator for long periods of time before being sent off for testing and left open to being compromised.

47.

On February 15, 2022, Plaintiff's attorney emailed then City Manager DIANE WESTBERRY in reference to the City's Position on the Evidence Room. On March 3, 2022, DIANE WESTBERRY resigned from the City of Nashville, GA.

**SUBSTANTIVE ALLEGATIONS**

48.

The Defendants operate an employment agency in the City of Nashville, Georgia, at which more than 20 persons are employed in the Nashville Police Department.

49.

Beginning in June 2014 and continuing at least through the present, the Defendants have engaged in a practice of racial, harassing, retaliation, hostile behavior in regards to Plaintiff.

50.

As a result of the racial, harassing, retaliatory, and hostile behavior identified in paragraph 13 and as a result of its failure to act and its actions toward Plaintiff, the Defendants discriminated against Plaintiff on the basis of his race in violation of § 703 of Title VII.

51.

COMPLAINT
13

Plaintiff believes and thus alleges that the persons responsible for these unlawful actions in 2021 and 2022 by Defendants and are still employed by the Defendants. Plaintiff thus believes and alleges that these unlawful practices continue today and will continue.

52.

The effect of Defendants lack of action has been and will continue to limit, classify and discriminate against Plaintiff in ways which jeopardize and tend to deprive him of employment opportunities and otherwise adversely affect his status as employee and position as a superior in the Nashville Police Department.

## INCORPORATION OF ALLEGATIONS

53.

All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## CLAIM FOR RELIEF

54.

Defendant CITY OF NASHVILLE, GA is a corporate, governmental body created pursuant to the laws of the State of Georgia.

55.

Defendant CHARLES EDWARDS, Chief of Police, is the chief employment officer of the Nashville Police Department. The Chief is sued in his official capacity only.

56.

The Defendants are persons within the meaning of 42 U.S.C § 2000e(a) and employers within the meaning of 42 U.S.C. § 2000e(b).

57.

The Defendants have discriminated against RICHARD M. VARN, II, who is employed by the Nashville Police Department on the basis of his race and national origin as he is of Lebanese descent.

58.

This discrimination in violation of 42 U.S.C § 2000e-2(a) occurred, among other ways, by:

    a.  Subjecting this employee to disparate discipline, treatment; and

    b.  Failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of RICHARD M. VARN, II.

59.

The Defendants also have discriminated against RICHARD M. VARN, II, in violation of 42 U.S.C § 2000e-3(a) by, among other things:

    a.  Subjecting this employee to disparate treatment within the Police Department, because RICHARD M. VARN, II, filed a charge with the EEOC.

    b.  Retaliating against this employee because he complaint to officials in the Police Department and the various City Managers about what he believed to be discrimination and disparate treatment in employment on the basis race; and

    c.  Failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of RICHARD M. VARN, II.

60.

**JURY DEMAND**

61.

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and 42 U.S.C §§ 1981a.

**PRAYER**

62.

Plaintiff requests that this Court:

A. That a declaratory judgment be issued that Plaintiff's rights have been violated as alleged above;

B. Enjoin the City and its directors, officers, agents, employees, successors, and all other persons in active concert or participation with the City, as appropriate, from failing or refusing to:

    a. Provide sufficient remedial relief to make whole RICHARD M. VARN, II for the loss he has suffered as a result of the discrimination against him as alleged in this Complaint.

    b. Take other appropriate nondiscriminatory measures to overcome the effects of the discrimination.

C. Award compensatory damages to RICHARD M. VARN, II, for mental or physical injuries incurred as a result of the discrimination against him as alleged in this Complaint, pursuant to and within the statutory limitations of 42 U.S.C §§ 1981a.

D. That Plaintiff have and recover from the Defendants, jointly and severally, compensatory damages, statutory liquidated, exemplary and punitive damages, and such other monetary relief as may be deemed appropriate in amounts to be determined at trial, but in no event less than $750,000.00;

E.  That Plaintiff recover from the Defendants, jointly and severally, prejudgment interest

to the maximum extent permitted by law;

F.  That Plaintiff recover from the Defendants, jointly and severally, his costs, including

expert witness fees and reasonable attorneys' fees, together with such other remedies

as may be provided by law;

G.  And that the Court grant such other and further relief as it deems just and proper.

Dated this  8  day of  June  , 20 22 .

Malcolm J. Warren, Esq.
THE WARREN LAW FIRM, LLC
Attorney for Plaintiff, Richard M. Varn, II
State Bar No. 385581

Address of Counsel:
THE WARREN LAW FIRM, LLC
111 Woodrow Wilson Dr, Suite B
Valdosta, GA 31602
mjwarren@thewarrenlawfirmllc.com
P: (229) 262-7773
F: (229) 262-1653

COMPLAINT
17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, MALCOLM J. WARREN, Esq., hereby certify that on this 8th day of June, 2022, I served copies of COMPLAINT, on the following parties by way of Personal Service via the Berrien County Sheriff's Office:

Rudolph Smith
City Manager for the City of Nashville
405 W Washington Ave
P O Box 495
Nashville GA 31639

and

Chief Charles Edwards
Chief of Police of the Nashville Police Department
1406 Saddle Club Ln
Nashville, GA 31639

This ___8___ day of ___June___, 20 _22_.

Malcolm J. Warren, Esq.
THE WARREN LAW FIRM, LLC
Attorney for Plaintiff
State Bar No. 385581

**Address of Counsel:**
THE WARREN LAW FIRM, LLC
111 Woodrow Wilson Dr, Suite B
Valdosta, GA 31602
mjwarren@thewarrenlawfirmllc.com
(229) 262-7773

COMPLAINT
18