**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| RICHARD M VARN, II, | : |
| | : |
| v. | :    CASE NO.: 7:22-CV-54 (WLS) |
| | : |
| CITY OF NASHVILLE, GA, | : |
| & CHARLES EDWARDS | : |
| | : |
|     Defendants. | : |
| | : |

**ORDER**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint in part pursuant to Federal Rule Civil Procedure 12(b)(6). (Doc. 6.) Therein, Defendants request that this Court enter an Order dismissing Plaintiff's claims against Charles Edwards, in his official capacity as chief of police, as well as any claim Plaintiff asserts pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the First Amendment and the Fourteenth Amendment on the basis that Plaintiff has failed to state a claim. (Doc. 6-1.) The reason that Defendants request an omnibus dismissal of Plaintiff's Complaint (Doc. 2) is that Plaintiff's Complaint is, Defendant contends, a shotgun pleading, from which it is patently unclear what claims Plaintiff is actually asserting.

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 6) for failure to state a claim for relief is **GRANTED in part and DENIED in part**. In addition, Defendants' Motion to Stay Discovery (Doc. 8) is **DENIED as MOOT**.

**PROCEDURAL HISTORY**

On June 8, 2022, Plaintiff initiated this action by filing a Complaint. (Doc. 1.) Plaintiff amended his Complaint, once as a matter of course on June 10, 2022. (Doc. 2.) Accordingly, the Amended Complaint is the operative complaint in this action.

Pursuant to Plaintiff's Amended Complaint, Plaintiff alleges that this action arises under the First and Fourteenth Amendments of the United States Constitution, as well as 42 U.S.C. §§ 1981, 1983, 1985 & 1986. (Doc. 2 at 1.) Plaintiff also invokes this Court's jurisdiction

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq as well as pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.

On August 9, 2022, Defendants filed a Partial Motion to Dismiss for Failure to State a Claim as well as a Motion to Stay Discovery, both of which remain pending. (Docs. 6 & 8.) Plaintiff never Responded to Defendants' Motions. Despite Plaintiff never responding, on August 9, 2022 Defendants filed a Reply. (Doc. 9.) Therein, Defendants contend that Plaintiff has abandoned the issues Defendants seek the dismissal of and reiterate their argument that Plaintiff failed to state a claim.

Accordingly, briefing has concluded, and Defendants' Partial Motion to Dismiss is ripe for disposition. (Doc. 6.)

## **RELEVANT FACTUAL SUMMARY**[1]

Plaintiff is a police officer who has been employed by the Nashville Police Department of Nashville, GA, since January 2014. (Doc. 2 ¶ 11.) Plaintiff currently holds the rank of Detective Sergeant within the police department. (*Id.* ¶ 12.)

On or about June 11, 2021, Plaintiff responded to a domestic violence call, which was being worked by Sergeant Yarbrough.[2] (*Id* ¶ 19.) While working the domestic violence dispute, Sergeant Yarbrough allegedly made disparaging comments about Hispanic people, particularly Mexicans. (*Id.*) When Plaintiff informed Sergeant Yarbrough that he took the comments personally, due to Plaintiff's wife being of Mexican descent, Sergeant Yarbrough proceeded to make disparaging comments about people of Arabic descent. (*Id.*) Plaintiff is of Lebanese descent. (*Id.*, ¶ 18.)

Unfortunately, according to Plaintiff, thinly veiled racially charged comments were not uncommon within the City of Nashville Police Department. For example, Plaintiff alleges that Sergeant Yarbrough made additionally racially disparaging comments in March and April 2021.

---

[1] The Court notes for the purposes of the record that at this stage of the proceedings, the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[2] The Court notes for the purposes of the record that Sergeant Yarbrough left the employment of the City of Nashville Police Department on August 5, 2021. (Doc. 2 ¶ 14.)

(*Id.*, ¶ 19.) Plaintiff also alleges that Defendant Edwards, once commented that he thought Plaintiff looked like Saddam Hussein at a birthday party in the presence of other officers. (*Id.*, ¶ 18.) Plaintiff also alleges that another officer within the department created an advertisement for Plaintiff on a homosexual dating website, utilizing Plaintiff's photos, stating that Plaintiff was a "Lebanese Lover looking for sex." (*Id.*, ¶ 40.) This advertisement was so prevalent that the head of the City of Nashville Water Department entered Plaintiff's office utilized racial slurs, called Plaintiff a Lebanese Lover, and danced to the song Egyptian lover. (*Id.*)

In response to Sergeant Yarbrough's conduct at the domestic violence call, Plaintiff filed a formal grievance on June 12, 2021, by email. (*Id.*, ¶¶ 15 & 20.) Per the employee handbook, grievances were to be put in writing. (*Id.* ¶ 20.) The following week, Plaintiff alleges that Defendant Edwards presented a pattern of hostility towards Plaintiff, specifically staring angrily while not acknowledging Plaintiff's presence. (*Id.*, ¶ 20.)

On June 17, 2021, Assistant Police Chief, Major Knowles, advised Plaintiff that Defendant Edwards had received his email grievance. (*Id.*, ¶ 21.) Major Knowles further advised Plaintiff that Defendant Edwards did not take grievances via email. (*Id.*) When Plaintiff replied that email was Plaintiff's preferred method of filing a grievance, due to it being time stamped and dated, Major Knowles advised Plaintiff that Defendant Edwards stated than "an email could be requested through an open records request." (*Id.*)

After this conversation, Plaintiff generally alleges that Defendants began to interfere with his work duties and ability to earn additional pay. For example, the weekend of June 25, 2021, to June 27, 2021, Sergeant Yarbrough called in one Lieutenant Busbin to assist Sergeant Yarbrough with a domestic violence case and a traffic fatality case. (*Id.*, ¶ 22.) It is Plaintiff's position that he should have been called in to work those cases and that Sergeant Yarbrough's decision to call Lieutenant Busbin caused Plaintiff to suffer financial losses in the loss of extra hours, "which could lead to overtime pay." (*Id.*, ¶ 22.) The arrangement of assigning Lieutenant Busbin additional after hours calls instead of Plaintiff allegedly continued through at least October 2021. (*Id.* ¶ 36.)

On July 3, 2021, another incident occurred, in which Plaintiff appears to allege that Defendant Edwards reprimanded him publicly for trying to keep the flow of traffic moving

3

on Adel Highway. (*Id.*, ¶ 23.) The method in which Plaintiff was reprimanded, over radio, allowed it to be overheard by fellow Nashville Police officers, officers from Berrien County, and civilians with scanners. (*Id.*, ¶ 23.)

On December 6, 2021, another incident occurred while Plaintiff was working the Christmas parade. (*Id.*, ¶ 39.) During that incident, Plaintiff received a phone call from Lieutenant Busbin informing Plaintiff that someone thought Plaintiff had left his post. (*Id.*) While it is unclear whether Plaintiff did in fact leave his post at the Christmas parade, Plaintiff alleges that he was informed over the radio to relieve himself of the post, which was not normal. (*Id.*)

Plaintiff escalated his grievance on July 7, 2021, by contacting then City Manager, Peter Schultz. (*Id.*, ¶ 24.) Schultz had not been made aware of Plaintiff's grievance prior to that communication but had received an email from Plaintiff's wife regarding Sergeant Yarbrough's hostility towards Mexicans. (*Id.*) Mr. Schultz informed Plaintiff that he had spoken to Defendant Edwards regarding Plaintiff's wife's email and had been assured that the matter was being looked into. (*Id.*) Plaintiff also advised Mr. Schultz of the hostile working conditions and environment at the July 7, 2021 meeting. (*Id.*)

On July 19, 2021, Assistant Chief Knowles advised Plaintiff that Defendant Chief Edwards was going to meet with Plaintiff to discuss his grievance. (*Id.*, ¶ 25.) Plaintiff and Defendant Edwards met on July 22, 2021, in Defendant Edwards' office. (*Id.*, ¶ 26.) Nobody else was present for this first meeting. (*Id.*) At the meeting Defendant Edwards advised Plaintiff that he had spoken on several occasions with City Manager Schultz regarding the grievance, but that there was no evidence to corroborate Plaintiff's account of the June 11, 2021 incident. (*Id.*) Defendant Edwards also communicated that while he had spoken with Sergeant Yarbrough regarding his comments in relation to Hispanics, Sergeant Yarbrough's comments did not measure up to the level of Plaintiff's allegations. (*Id.*) Plaintiff alleges that Defendant Edwards offered two options for resolving the grievance at the meeting: (1) being that Defendant Edwards would close the grievance as unsubstantiated, or (2) offer Plaintiff a polygraph. (*Id.*)

Plaintiff met with Defendant Edwards again on July 23, 2021. (*Id.*, ¶ 27.) At this meeting Assistant Chief Knowles was present. (*Id.*) Plaintiff alleges that Defendant Edwards made continuous efforts to get Plaintiff to drop his grievance and allegations at that meeting. (*Id.*)

On July 28, 2021, another meeting was held between Plaintiff and Defendant Edwards. (*Id.*, ¶ 28.) Assistant Chief Knowles was present. (*Id.*) At this meeting Defendant Edwards advised Plaintiff that he had closed the internal investigation as Plaintiff's allegations were unfounded. (*Id.*) Plaintiff was not provided with any of the evidence that was used to form the decision. (*Id.*) Plaintiff was never provided with an explanation as to why he was not permitted to take a polygraph test. (*Id.*)

On August 3, 2021, Plaintiff appealed Defendant Edward's decision on Plaintiff's grievance to City Manager Schultz. (*Id.*, ¶ 29.) On August 13, 2021, Mr. Schultz informed Plaintiff that he was investigating and had called in new and old employees of the Nashville Police Department. (*Id.*, ¶ 30.) On September 16, 2021, Plaintiff emailed Mayor Pro Tem John Clayton in reference to his appeal. (*Id.*, ¶ 31.) While Mr. Clayton did not initially respond directly, Plaintiff did receive a follow-up email from Mr. Schultz informing him that investigation was still ongoing. (*Id.*, ¶ 31.) Mr. Clayton responded on September 18, 2021, indicating that he would look into the issue when he returned to town. (*Id.*, ¶ 32.)

On October 4, 2021, Mr. Schultz held a meeting with Plaintiff. (*Id.*, ¶ 34.) Immediately before meeting with Plaintiff, Mr. Schultz had a meeting with Defendant Edwards. (*Id.*) While not expressly stated in the Complaint, it would appear that Mr. Schultz denied Plaintiff's appeal, while expressing that he thought Plaintiff's grievance should have been handled differently. (*Id.*) Mr. Schultz also informed Plaintiff that Defendant Edwards decision letter would be placed in Sergeant Yarbrough's file, but upon information and belief Plaintiff alleges that the letter was placed in his personnel file. (*Id.*)

Plaintiff then appealed Mr. Schultz's decision to Mayor Clayton. (*Id.*, ¶ 35.) Mr. Clayton responded the same day indicating that Plaintiff's appeal would be added to an executive session at the next city council meeting. (*Id.*) While his appeal was pending with Mr. Clayton, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") on October 21, 2022. (*Id.*, ¶ 37.) In order to ensure that his appeal was being investigated,

Plaintiff also emailed the entire city council on October 28, 2021. (*Id.*, ¶ 38.) And met with the new City Manager, Diane Westberry, on January 11, 2022, to provide her with his appeal documents. (*Id.*, ¶ 41.)

At some point during this sequence of events, Plaintiff was assigned to work in the City of Nashville Police Department evidence room. (*Id.*, ¶ 16.) Plaintiff maintains that he is not qualified to work in the evidence room and that assigning Plaintiff to the evidence room was against the policies and procedures of the Nashville Police Department, GA POST standards[3], and Georgia Law. (*Id.*) Based on these concerns, as well as Lieutenant Busbin's alleged instructions that would violate the integrity of the evidence room and evidence, Plaintiff filed another grievance on January 12, 2022. (*Id.*, ¶ 42.) Plaintiff emailed his concerns regarding his placement in the City of Nashville Police Department evidence to the City of Nashville City Council on January 30, 2022. (*Id.*, ¶ 44.)

It is unclear from the Amended Complaint whether the City of Nashville ever took a position on either of Plaintiff's grievances.

## **DISCUSSION**

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*,

---

[3] The Court notes for the purposes of the record that Plaintiff never contextualized or explained what the GA POST standards are.

6

550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In addition to considering the four corners of a complaint, a district court may also consider an extrinsic document only if it is central to a plaintiff's claim and its authenticity has not been challenged. *SFM Holdings, Ltd. v. Banc of America Sec., LLC.*, 600 F.3d 1334, 1337 (11th Cir. 2010).

As stated *supra*, Defendants move to dismiss Plaintiff's claims against Charles Edwards, in his official capacity as chief of police, as well as any claim Plaintiff asserts pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the First Amendment and the Fourteenth Amendment. (Doc. 6-1.) It is Defendants' position that Plaintiff's claims against Defendant Edwards in his official capacity are redundant, that Plaintiff has failed to allege facts sufficient to state a claim against the City of Nashville pursuant to 42 U.S.C. § 1983, that Plaintiff has failed to plead a claim pursuant to 42 U.S.C. § 1981, that Plaintiff has failed to plead a conspiracy claim under 42 U.S.C. § 1985, that Plaintiff has failed to state a claim under 42 U.S.C. § 1986, that Plaintiff has failed to allege a First Amendment violation under 42 U.S.C. § 1983, that Plaintiff has failed to state a claim under the Fourteenth Amendment, and that Plaintiff's punitive damages claim fails as a matter of law. The Court

7

shall address each of these arguments in turn and then Defendants' additional argument that Plaintiff has abandoned certain claims.

### I. Plaintiff's 42 U.S.C. § 1983 Claim against Defendant Edwards, in his Official Capacity, is DISMISSED as Redundant

According to the United States Supreme Court, when an officer is sued under 42 U.S.C. § 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). This is because suits against municipal officers in their official capacities are "in actuality, suits directly against the city that the officer represents." *Id.* And as suits against a municipal officer in his "official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

In the present case, Defendant Edwards is entitled to dismissal of Plaintiff's 42 U.S.C. § 1983 claims against him, as Defendant Edwards is only named in his official capacity (Doc. 2 ¶ 5) and the City of Nashville, Defendant's employer, is a party to this action. Accordingly, to the extent that Plaintiff alleges a 42 U.S.C. § 1983 claim against Defendant Edwards in his official capacity, such claims are **DISMISSED**.

### II. Plaintiff's 42 U.S.C. § 1983 Claim against the City of Nashville is DISMISSED as Plaintiff Failed to Plead an Official Policy or Custom

Local government bodies such as counties are persons within the meaning of § 1983 and can be held accountable for deprivations of federally protected rights. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 689 (1978). However, the "Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). In the United States Court of Appeals for the Eleventh Circuit, a city is only "liable under section 1983 … for those acts for which [the city] is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). Stated otherwise, a city is only liable when the city's "official policy" causes the constitutional violation in question. *Monell*, 436 U.S. at 694. Accordingly, for Plaintiff's claims against the City of Nashville, GA to proceed, Plaintiff must either identify (1) an officially promulgated city policy, which resulted in the constitutional violation in question, or (2) an unofficial custom or practice of the city shown through the

8

repeated acts of a final policymaker for the city. *Monell*, 436 U.S. at 690. (*See Depew v. City of St Mary's*, 787 F.2d 1496, 1499) (11th Cir. 1986)) (applying the *Monell* customs and practice test to cities.)

In the present case, Plaintiff's 42 U.S.C. § 1983 claim against the City of Nashville, GA must be dismissed as Plaintiff did not satisfy either requirement. In his Amended Complaint (Doc. 2) Plaintiff neither identified, by factual allegation, an official City of Nashville, GA, policy that resulted in the constitutional violation in question, nor showed, by factual allegation, that an unofficial custom or practice of City of Nashville, as shown through the repeated acts of a final policymaker for the city, caused the deprivation of Plaintiff's constitutional rights. (*Id.*)

While Plaintiff has made a generalized allegation that racially charged comments were frequently directed at him, and possibly other minorities, by various employees of the City of Nashville, the Court notes that Plaintiff never alleges that the City of Nashville, GA was directing the practices and policies of the Nashville Police Department, as it pertained to those comments. In addition, Plaintiff has failed to plead facts that would allow this Court to conclude that the City of Nashville, GA, as shown through the repeated acts of a final policymaker for the city, caused the deprivation of Plaintiff's constitutional rights.

Accordingly, to the extent that Plaintiff asserts a claim against the City of Nashville, GA pursuant to 42 U.S.C. § 1983, that claim is **DISMISSED**.

### III. Plaintiff's 42 U.S.C. § 1981 Claims against Defendants are DISMISSED as 42 U.S.C. § 1981 Does not Provide a Cause of Action Against State Actors

In *Jett v. Dallas Independent School District*, the United States Supreme Court examined whether 42 U.S.C. § 1981 created a private cause of action against state actors. 491 U.S. 701 (1989). The *Jett* Court held that while § 1981 creates a right that state actors may violate, a Plaintiff must use the remedial provision of § 1983 to enforce against state actors the rights created by § 1981. *Id.* Put another way, "§1981(c) makes clear that the section creates a right that private or state actors may violate but does not itself create a remedy for that violation." *Butts v. County of Volusia*, 222 F.3d 891 894 (11th Cir. 2000).

9

In the present case, Defendant Edwards and the City of Nashville, GA, are both state actors. Accordingly, to the extent that Plaintiff brings claims against Defendants pursuant to 42 U.S.C. § 1981, independent of § 1983, those claims are **DISMISSED** as 42 U.S.C. § 1981 does not create a private cause of action against state actors enforceable by § 1981, and Plaintiff must proceed under 42 U.S.C. § 1983.

### IV. Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim against Defendants is DISMISSED

Turning next to Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim. (Docs. 2 ¶ 1 & 6-1 at 11.) It is Defendant's position that Plaintiff has failed to plead a conspiracy claim, and therefore it is subject to dismissal. (Doc. 6-1 at 11-12.)

In the present case, Plaintiff has failed to plead a conspiracy claim as Plaintiff has not pled factually that an agreement existed between "two or more person" to interfere with Plaintiff's civil rights. 42 U.S.C. § 1985. *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). In fact, apart from referencing 42 U.S.C. § 1985 in the first paragraph of the Amended Complaint (Doc. 2 ¶ 1), Plaintiff failed to allege any additional facts that would support a finding that Defendants had entered into a conspiracy to violate Plaintiff's civil rights.

Accordingly, to the extent that Plaintiff asserts a 42 U.S.C. § 1985 Conspiracy Claim against Defendants, that claim is **DISMISSED**.

### V. Plaintiff's 42 U.S.C. § 1986 Claim Against Defendants is DISMISSED

Turning next to Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. § 1986 Neglecting to Prevent Conspiracy Claim. (Doc. 6-1 at 12.) It is Defendant's position that Plaintiff's 42 U.S.C. § 1986 claim is subject to dismissal as Plaintiff failed to plead a 42 U.S.C. § 1985 conspiracy claim, which is a necessary predicate to bring a 42 U.S.C. § 1986 claim. (*Id.*) *See Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997) (a § 1986 claim requires a violation of § 1985).

In the present case, Plaintiff's 42 U.S.C. § 1986 claim is subject to dismissal as "[t]he text of § 1986 requires the existence of a § 1985 conspiracy" which Plaintiff failed to factually plead. *Id.*, 120 F.3d 1160. *See* 42 U.S.C. § 1986. Accordingly, as Plaintiff has failed to plead that Defendants "knew of a § 1985 conspiracy" or plead sufficient facts to establish that a §

1985 conspiracy was plausible, Plaintiffs 42 U.S.C. § 1986 claims against Defendants are **DISMISSED**.

### VI. Defendants' Motion to Dismiss Plaintiff's First Amendment Claim is DENIED

Turning next to Defendant's Motion to Dismiss Plaintiff's First Amendment Claim, which was brought pursuant to 42 U.S.C. § 1983. (Doc. 6-1 at 13.) It is Defendants' position that Plaintiff has failed to make out the prima facie case of a First Amendment retaliation claim as Plaintiff cannot show that (1) his speech touched on a matter of public concern; (2) that Plaintiff's interests as a citizen outweigh the interests of the State as an employer, and (3) that the speech played a substantial role or motivating role in the government's decision to take an adverse employment action.

In support of their contention that Plaintiff failed to make a prima facie case of First Amendment retaliation, Defendants claim that Plaintiff's Complaint "does not identify the speech in question, does not identify facts that support that the speech is related to a matter of public concern, and does not allege that any speech played a substantial or motivating role in the City's decision to take any specific adverse action against him." (Doc. 6-1 at 14.) Defendants also contend that any speech at issue in this case was personal, and therefore could not have been a matter of public concern. This latter argument is a contention that more properly relates to a motion for summary judgment than to pleadings issues raised by Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. (Doc. 6-1.)

This Court does not agree with Defendant's contentions, however, as Plaintiff speech touched on a matter of public concern – displays of racism by public employees and more concerningly officers of the peace – and has alleged sufficient facts to discern that the adverse actions of which he complained are tentatively linked to his decision to file a written grievance regarding his fellow officer's conduct. While Plaintiff never explicitly states that he was commenting on a matter of public concern, Plaintiff is entitled to discovery as to whether the City of Nashville's police department's decision to take adverse employment action against him was a result of his decision to speak out on a matter of public concern. The Court finds that Plaintiff has asserted sufficient facts to raise his claim above the merely plausible level.

Accordingly, to the extent that Defendants seek dismissal of Plaintiff's First Amendment retaliation claim, Defendants' Motion (Doc. 6-1) is **DENIED**.

### VII. Defendants Motion to Dismiss Plaintiff's Fourteenth Amendment Claim is DENIED.

Turning next to Defendant's Motion to Dismiss Plaintiff's Fourteenth Amendment Claim, which was brought pursuant to 42 U.S.C. § 1983. (Doc. 6-1 at 14.) It is Defendants' position that Plaintiff's Fourteenth Amendment claim fails as Plaintiff was never terminated from his position, and therefore has no viable Fourteenth Amendment Due Process Claim. (Doc. 6-1 at 15.)

The *Due Process Clause of the Fourteenth Amendment* provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. The Supreme Court's interpretation of this clause explains that Fourteenth Amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990.) A violation of either of these kinds of protection can form the basis of a 42 U.S.C. § 1983 suit. *Id.*

In the present case, while not explicitly stated, Plaintiff alleges a procedural due process violation. Plaintiff alleges a procedural due process violation, because in the United States Court of Appeals for the Eleventh Circuit, "in non-legislative cases, only procedural due process claims are available to pretextually terminated employees." *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994.)

While Defendants rely on the fact that Plaintiff was not terminated from his position (Doc. 6-1 at 14), in support of their contention that dismissal of Plaintiff's Fourteenth Amendment claim is appropriate, according to the United States Court of Appeals for the Eleventh Circuit it is at least "theoretically possible" that a "demotion could trigger procedural due process obligations even though the employee continues to work for the employer." *Ross v. Clayton County*, 173 F.3d 1305, 1308 (11th Cir. 1999). Accordingly, the fact that Plaintiff was terminated is not dispositive as Defendants contend.

In the present case, however, Defendants are not entitled to dismissal of Plaintiff's Fourteenth Amendment claim as Plaintiff has factually alleged facts that would support an inference that Plaintiff was effectively demoted. For instance, Plaintiff alleges not only an

interference in his ability to work additional hours that may have led to overtime, but also that Plaintiff was subsequently assigned to the evidence room. (Doc. 2 ¶ 16.) While Plaintiff does not state that this reassignment was a demotion, and rather focuses on the fact that Plaintiff was not qualified to work in the evidence room, the act of reassigning Plaintiff to a position that he was not authorized may theoretically give rise to a Fourteenth Amendment due process violation, and Plaintiff is entitled to discovery on this matter.

Accordingly, Defendant's Motion to Dismiss Plaintiff's Fourteenth Amendment Claim (Doc. 6-1 at 15) is **DENIED**.

### VIII. Defendant's Motion to Dismiss Plaintiff's Punitive Damages Claim is GRANTED in part.

Turning next to Defendants' Motion to Dismiss Plaintiff's Punitive Damages Claims. (Doc. 6-1 at 15.) It is Defendants' position that Plaintiff's punitive damages claim fails as a matter of law on the basis that municipalities are immune from punitive damages awards under 42 U.S.C. § 1983 and Title VII does not permit recovery of punitive damages against municipalities. (Doc. 6-1 at 15.) Defendants also contend that government officials, who have been sued in their official capacities, are immune from punitive damages awards. (Doc. 6-1 at 15-16.)

As to Plaintiff's punitive damages claims, Defendants are correct on two (2) out of three (3) points. As an initial matter, Defendants are correct that as a matter of law municipalities are immune from punitive damages awards under 42 U.S.C. § 1983, *Newport v. Fact Concerts*, 453 U.S. 247, 268 (1981). In addition, Defendants also correctly note that while punitive damages are available in § 1983 cases upon a showing of evil motive or intent, they are "only allowable against defendants in their individual capacities and are not available in official capacity suits." *Hopp v. Wikse*, 2008 U.S. Dist. LEXIS 117332 (S.D. Fla. Nov. 24, 2008).

Defendants are incorrect in their assertion that Title VII does not permit recovery of punitive damages, however. (Doc. 6-1 at 15.) While Defendant's rely upon *Walker v. Ford Motor Co.*, which holds that a Plaintiff cannot seek an award of punitive damages under the Civil Rights Act of 1964, *Walker* has since been superseded by the Civil Rights Act of 1991. The Civil Rights Act of 1991, permits a Plaintiff to seek the recovery of punitive damages under Title VII. *See Gogel v. Kia Motors Mfg., of Ga.*, 967 F.3d 1121 (11th Cir. 2020.)

13

Accordingly, to the extent that Defendants seek the dismissal of Plaintiff's punitive damages claims, Defendants' Motion is **GRANTED in part**. Defendants Motion (Doc. 6-1) is **GRANTED** as to any claim Plaintiff asserts under 42 U.S.C. § 1983 against the City of Nashville and Defendant Charles Edwards, in his official capacity,[4] but **DENIED** as to any claim Plaintiff brings under Title VII against the City of Nashville and Defendant Edwards.

### IX. Plaintiff has Abandoned Certain Arguments

Turning finally, to Defendants' final argument, which was included in their unsolicited Reply (Doc. 9), that by failing to respond to Defendants' Motion to Dismiss (Doc. 6) Plaintiff abandoned certain claims as unopposed. Defendants are correct that Plaintiff's failure to respond constitutes abandonment of the issues. (Doc. 9.)

Plaintiff's failure to respond constitutes abandonment of the issues, as Courts in the Eleventh Circuit and beyond have consistently found that a party's failure to respond or oppose a pending dispositive motion may constitute abandonment of the claims at issue in that motion. *See Coalition for Abolition on Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 200) (*see also Black v. Panola Sch. Dist.*, 41 F.3d 584, 588 n.1 (5th Cir. 2006).). In the present case, as noted *supra*, Plaintiff has taken no action in this matter since filing the Amended Complaint. (Doc. 2.) This inaction supports a finding of abandonment. *See Hudson v. Northfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (providing that "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned").

However, Plaintiff's failure to respond in the present case is immaterial, because as outlined *supra*, Defendants are correct that Plaintiff has failed to state a claim under almost all of the causes of action that Plaintiff alleges. The only causes of action that Defendants sought to dismiss that has survived is Plaintiff's First and Fourteenth Amendment claims. Plaintiff's First and Fourteenth Amendment claims were stated with sufficient factual allegations to survive Defendant's 12(b)(6) Motion to Dismiss and therefore are not subject to dismissal at this stage of the proceedings. Accordingly, abandonment of the issue does not apply, because a district court cannot grant Defendant's Motion to Dismiss solely on the basis that it was

---

[4] The Court notes for the purposes of the record that Plaintiff's Complaint (Doc. 2) does not name Defendant Edwards in his individual capacity.

14

unopposed, but, rather, must consider the merits of the Motion. *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1101 (11th Cir. 2004.)

## CONCLUSION

In summary, Defendants' Partial Motion to Dismiss (Doc. 6) Plaintiff's Complaint is **GRANTED in Part** and **DENIED in part**. It is hereby **ORDERED** that Plaintiff's 42 U.S.C. § 1983 official capacity claims against Defendant Edwards are **DISMISSED** as they are redundant of the claims against the City of Nashville, GA. It is also hereby **ORDERED** that to the extent Plaintiff brings a 42 U.S.C. § 1983 claim against the City of Nashville, that claim is **DISMISSED** as Plaintiff failed to plead an official policy or unofficial custom led to the deprivation of his rights. It is further **ORDERED** that Plaintiff's 42 U.S.C. § 1981 claim is **DISMISSED** as 42 U.S.C. § 1981 does not provide a private cause of action against State actors. In addition, Plaintiff's 42 U.S.C. § 1985 and 42 U.S.C. § 1986 claims are **DISMISSED** as Plaintiff failed to factually plead a conspiracy. Defendant's Motion to Dismiss Plaintiff's First Amendment Retaliation Claim is **DENIED** as Plaintiff's speech touched on a matter of public concern and Plaintiff is entitled to discovery of whether he was retaliated against. Defendant's Motion to Dismiss Plaintiff's Fourteenth Amendment claim, however, is **DENIED** as Plaintiff may theoretically be able to make out a procedural due process claim. Furthermore, Defendant's Motion to Dismiss Plaintiff's punitive damages claims is **GRANTED in part**. Finally, Defendants' Motion to Stay Discovery (Doc. 8) is **DENIED as MOOT**.

Accordingly, all that remains is Plaintiff's First Amendment retaliation claim, Plaintiff's Fourteenth Amendment procedural due process claim, Plaintiff's Title VII and punitive damages claims against the City of Nashville, GA and Defendant Edwards, and Plaintiff's corresponding request for declaratory judgment. A discovery conference will be noticed by separate Order or notice.

**SO ORDERED**, this 21st day of March 2023

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**